```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

IN RE: JAMES EDWARD MULLINS
and MARTHA HOPKINS MULLINS,

    Debtors

WEST VIRGINIA STATE TAX DEPARTMENT,

    Appellant

v.                                              Civil Action No. 2:00-0571
                                                 Bankruptcy No. 98-20033

JAMES EDWARD MULLINS
and MARTHA HOPKINS MULLINS,

    Appellees

## MEMORANDUM OPINION AND ORDER

       The appellant, West Virginia State Tax Department (the "Tax Department"), appeals the bankruptcy court's May 9, 2000, order.

       The bankruptcy court found that the appellant willfully violated the automatic stay of 11 U.S.C. § 362(a) by filing tax liens against the debtors' property instead of seeking a post-petition inclusion in the plan. The lien filing occurred after confirmation of the debtors' Chapter 13 plan but prior to termination of the Chapter 13 proceeding that spawned it.

I.

On October 5, 1993, the debtors instituted a Chapter 13 proceeding in the United States Bankruptcy Court for the Southern District of West Virginia (the "1993 case").  On June 29, 1994, a proposed plan was confirmed.  The plan required the debtors to make monthly payments of $1,343 to the Chapter 13 trustee for a period of sixty months and one extra payment of $1,800.  (Record on Appeal ("ROA"), Doc. 19-1 at 1).  The trustee's final report and accounting was filed in the 1993 case on July 23, 1998.  (ROA, Docket Card at 8).

During the pendency of the 1993 case, the Tax Department filed four tax lien notices with the Kanawha County Circuit Clerk against the debtors' property for unpaid post-petition state income taxes.  Those notices were filed on January 12, 1995, January 21, 1995, July 31, 1997, and October 17, 1997.  (ROA Proof of Claim (Mar. 4, 1998)).  The Tax Department failed to either (1) seek a lifting order on the automatic stay, or (2) file a proof of claim pursuant to 11 U.S.C. § 1305 prior to the lien filings.

On July 28, 1997, the debtors apparently moved to add the unpaid post-petition state income taxes to their 1993 case.

2

Prior to a ruling, however, the debtors made a final, lump-sum plan payment. As a result, on October 21, 1997, the bankruptcy court denied as moot their motion regarding the unpaid post-petition taxes.

On January 9, 1998, the debtors instituted a second Chapter 13 proceeding aimed at reorganizing their federal and state tax debts. (ROA Docket Card at 1). The debtors filed a proposed Chapter 13 plan the same day. (Id.) The plan provided for the debtors to make payments to the Tax Department of $125.93 per month for sixty months. (ROA Doc. 2-1 at 2). The unpaid state income taxes were classified in the plan as "Class One - Allowed Unsecured Claims" entitled to priority pursuant to 11 U.S.C. § 507. (Id.).

The Tax Department filed a proof of claim on March 4, 1998, seeking payment of $10,431.20 in unpaid state income taxes. (ROA Proof of Claim (Mar. 4, 1998)). The same day, the Tax Department objected to the debtors' Chapter 13 plan, contending its claim was secured. (ROA 6 at 1). On April 7, 1998, the debtors objected to the Tax Department's claim, asserting it was unsecured. The basis for that assertion was that the Tax Department had ostensibly violated the automatic stay by filing the tax liens during the pendency of the 1993 case. (ROA 8-1).

3

On June 3, 1998, the bankruptcy court conducted a hearing on the matter.  On May 9, 2000, the bankruptcy court found that the Tax Department violated the automatic stay when it filed the tax liens during the pendency of the 1993 case.  The bankruptcy court concluded that the debtors' property "remain[ed] property of the bankruptcy estate until the case . . . [was] closed, dismissed or converted pursuant to 11 U.S.C. § 1306, as the debtors' ownership interest was subject to the interests of the estate in completion of the plan until that time."  In re Mullins, No. 98-20033, slip op. at 15-16 (Bankr. S.D. W. Va. May 9, 2000).

In reaching this conclusion, the bankruptcy court adopted the "estate preservation" approach, one of four possible positions presently utilized by courts to determine what remains property of the estate after plan confirmation.  The bankruptcy court further concluded that the Tax Department willfully violated the automatic stay when it filed the tax liens.  Id. at 16.  The sum of its findings in support of that conclusion, however, appear limited to the following observations:

> Due to the Tax Dept.'s knowledge of the ongoing bankruptcy in the debtors' 1st case, this Court finds that the violation was willful.  "[K]nowledge of the bankruptcy is the equivalent of knowledge of the stay."  "Thus, a deliberate or intentional act done with

>    knowledge of the bankruptcy, which violates the
>    automatic stay, constituted a willful violation."

Id.  Having found a willful stay violation, the bankruptcy court further found that the liens were void and that the accompanying claims were properly treated as unsecured. (Id.).

On May 19, 2000, the Tax Department noticed its appeal of the bankruptcy court's May 9, 2000, order.  First, the Tax Department contends the bankruptcy court erred in finding a stay violation.  It asserts, inter alia, that, pursuant to 11 U.S.C. § 1327(b)(2), the debtors' property was no longer part of the bankruptcy estate, having been fully vested in the debtors at confirmation and thus not covered by the stay.  Second, the Tax Department contends that even if the bankruptcy court correctly found a stay violation, a willful violation is not supported by the record.

II.

A.   The Standard of Review

The court is vested with jurisdiction pursuant to 28 U.S.C. § 158.  The bankruptcy court's factual findings are entitled to deference and consequently are reviewed only for

clear error. Bankruptcy Rule 8013; <u>In re Ekenasi</u>, 325 F.3d 541, 544 (4th Cir. 2003). Under the "clearly erroneous" standard, "findings of fact will be affirmed unless [the appellate court's] review of the entire record leaves [it] with the definite and firm conviction that a mistake has been committed." <u>Harman v. Levin</u>, 772 F.2d 1150, 1153 (4th Cir. 1985). Although the court is to apply the "clearly erroneous" standard of review for the bankruptcy court's findings of fact, the bankruptcy court must have sufficiently delineated the evidentiary basis for its decision. <u>In re Excalibur Automobile Corp. v. Robinson</u>, 859 F.2d 454, 458-59 (7th Cir. 1988); <u>In re HSSI, Inc.</u>, 193 B.R. 851, 854 (N.D. Ill. 1996). The bankruptcy court's conclusions of law are reviewed <u>de</u> <u>novo</u>. <u>In re Ekenasi</u>, 325 F.3d at 544.

B.   The Split of Authority

Property of the estate under Chapter 13 is defined by 11 U.S.C. § 1306(a), which provides:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title--
>
> > (1)  all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

6

>    (2) earnings from services performed by the
>    debtor after the commencement of the case but
>    before the case is closed, dismissed, or
>    converted to a case under chapter 7, 11, or
>    12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). Section 1306(a) appears to convert all after-acquired property owned by the debtors to property of their bankruptcy estate until their Chapter 13 proceeding is closed, dismissed, or converted.

The question becomes a bit muddled, however, when one takes account of 11 U.S.C. § 1327(b). Section 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). Our court of appeals has observed in dicta that "[g]iven the language of §§ 1306(a) and 1327(b), it is understandable that the interplay of these two sections of the Bankruptcy Code has troubled courts and commentators." In re Murphy, 474 F.3d 143, 154 (2007).[1] That observation is correct. See, e.g., In re Reynard, 250 B.R. 241, 246-47 (Bankr. E.D. Va. 2000); In re Holden, 236 B.R. 156, 160-63 (Bankr. D. Vt. 1999); In re Leavell, 190 B.R. 536, 539 (Bankr. E.D. Va. 1995); see also Thomas E. Ray,

---

[1] In the cited case, the court of appeals was not required to analyze the interplay between the two statutes or choose one of the various approaches that have developed concerning their proper interpretation.

7

*Post-Petition Claims and the Automatic Stay in Chapter 13*, 19-FEB Am. Bankr. Inst. J. 12 (2000); Donaldson, *supra*, 126 A.L.R. Fed. 665 §§ 2-5; Vickie L. Vaska, *Property of the Estate After Confirmation of a Chapter 13 Repayment Plan: Balancing Competing Interests*, 65 Wash. L. Rev. 677 (1990).

As noted, four different approaches have developed as courts attempt to resolve the perceived statutory conundrum.  The first approach is represented by those courts that interpret section 1306(a) to provide for the continuation of the bankruptcy estate until the Chapter 13 case is concluded.  This position, chosen by the bankruptcy court here, and known as the "estate preservation" approach, has been adopted by the United States Court of Appeals for the Eighth Circuit.  See *Security Bank of Marshalltown v. Neiman*, 1 F.3d 687 (8th Cir. 1993); *see also*, *e.g.*, *Annese v. Kolenda*, 212 B.R. 851 (W.D. Mich. 1997); *In re Suarez*, 149 B.R. 193 (Bankr. D.N.M. 1993); *In re Henry*, 143 B.R. 811 (Bankr. W.D. Pa. 1992); *In re Price*, 130 B.R. 259 (Bankr. N.D. Ill. 1991); *In re Aneiro*, 72 B.R. 424 (Bankr. S.D. Cal. 1987).

In adopting the estate-preservation approach, the bankruptcy court considered the language of sections 1306(a) and 1327(b).  The bankruptcy court undertook a thoughtful analysis culminating in the following conclusion: the language contained

in section 1327(b) providing that "the confirmation of a plan vests all property of the estate in the debtor," means that, upon confirmation, the debtors receive "something less than full ownership rights, subject to the interests of the estate in completion of the plan." In re Mullins, No. 98-20033, slip op. at 10 (Bankr. S.D. W. Va. May 9, 2000).

According to the bankruptcy court, the word "vest," as used in section 1327(b), does not necessarily mean that the debtors automatically receive "full ownership rights upon confirmation." (Id. at 8, 10). Instead, the bankruptcy court concluded that "the term 'vest' . . . confers . . . more than the possessory interest granted by section 1306(b), but less than a full ownership interest due to the overriding interest of the estate in completion of the plan." (Id. at 12). According to the bankruptcy court, "[t]his interpretation bolster[ed]" its own view "that Chapter 13 debtors are not entitled to encumber and dispose of property outside the plan payments as they see fit, without prior court approval, because such acts could affect the debtors' ability to effectively carry out a plan." (Id.).

The second approach is represented by those courts holding that the confirmation order terminates the bankruptcy estate, re-vesting all property of the estate in the debtor at that time. See, e.g., In re Mason, 51 B.R. 548 (D. Or. 1985); In

9

re Toth, 193 B.R. 992 (Bankr. N.D. Ga. 1996); In re Lambright, 125 B.R. 733 (Bankr. N.D. Tex. 1991); In re Petruccelli, 113 B.R. 5 (Bankr. S.D. Cal. 1990); In re Walker, 84 B.R. 888 (Bankr. D.C. 1988); In re Dickey, 64 B.R. 3 (Bankr. E.D. Va. 1985); In re Denn, 37 B.R. 33 (Bankr. D. Minn. 1983); In re Stark, 8 B.R. 233 (Bankr. N.D. Ohio 1981).  This position, referred to as the "estate termination" approach, has been adopted by a fewer number of courts, in part because it is said to "render[] various Code statutes and rules meaningless or superfluous . . . ."  Blanche D. Smith, Property of the Estate--To Be or Not to Be? That is the Question the Trustee Asks of Thee, 21 Am. Bankr. Inst. J. 28, 65 (2003).

The third position, referred to as the "middle-of-the-road"[2] approach, has been adopted by those courts concluding the estate continues to exist only with regard to property that is necessary for the performance of the plan.  This approach has been followed by the United States Courts of Appeal for the Seventh and Eleventh Circuits, both being cases involving post-confirmation earnings, as well as other courts.  See Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1340 (11th Cir. 2000); In re Heath, 115 F.3d 521, 524 (7th Cir. 1997); see also, e.g.,

---

[2]Also termed the "estate transformation" approach.

10

In re Leavell, 190 B.R. 536 (Bankr. E.D. Va. 1995); In re Thompson, 142 B.R. 961 (Bankr. D. Colo. 1992); In re McKnight, 136 B.R. 891 (Bankr. S.D. Ga. 1992); In re Ziegler, 136 B.R. 497 (Bankr. N.D. Ill. 1992); In re Martin, 73 B.R. 721 (Bankr. C.D. Cal. 1987); In re Root, 61 B.R. 984 (Bankr. D. Colo. 1986).

The fourth position, which has been referred to as the "modified estate transformation" approach, harmonizes sections 1306(a) and 1327(b), giving effect to both. Courts following this approach have held that property of the estate in existence at the time the petition is filed and after-acquired property down to confirmation, which includes both pre-petition property and all property acquired after the commencement of the case through confirmation of the plan (Section 1306(a)), vests in the debtor upon plan confirmation, unless otherwise provided in the plan or the order confirming the plan (section 1327(b)). Immediately thereafter, however, any property acquired post-confirmation, including wages, becomes property of the estate and is protected by the automatic stay (section 1306(a)). This approach has been adopted by the United States Court of Appeals for the First Circuit in Barbosa v. Soloman, 235 F.3d 31, 37 (1st Cir. 2000), allowing a post-confirmation amendment to the plan under 11 U.S.C. § 1329(a) in order to capture for the repayment

11

plan a substantial increase in resale value realized by the debtor from property revested in the debtor under section 1327(b).

An approach falling generally within the estate preservation category, and being somewhat similar to that of the bankruptcy court herein, was taken in <u>Woodard v. Taco Bueno Restaurants, Inc.</u>, No. 4:05-CV-804-V, 2006 WL 3542693 (N.D. Tx. Dec. 8, 2006), an unpublished decision cited in dicta in the court of appeals' decision in <u>In re Murphy</u>.[3] The court in <u>Woodard</u> applies a dictionary definition to the term "vest" in section 1327(b), leading to the following analysis:

> Applying . . . ordinary definitions of the term, the Court believes that at the time of confirmation, the debtor is given an immediate and fixed right to the future enjoyment of the bankruptcy estate, whatever assets it consists of, free and clear of any claims of any creditor provided for by the confirmed plan. Although this is an immediate and fixed right, it is one the debtor does not enjoy <u>until he has faithfully completed his obligations under the plan</u> and is entitled to a discharge. Under this interpretation, after confirmation, the bankruptcy estate continues to exist and assets may be added to the estate in accordance with section 1306, but the debtor is immediately vested with the right to the future enjoyment of the assets in that estate free and clear of any creditor claims provided for by the plan <u>once he faithfully completes his obligations under the plan and is entitled to a discharge</u>.

<u>Id.</u>, 2006 WL 3542693, at *9 (emphasis supplied).

---

[3]The decision in <u>Woodard</u> is, as noted, unpublished. Additionally, the analysis of sections 1306(a) and 1327(b) found in that decision are embedded within a discussion of the doctrine of judicial estoppel.

The analysis in <u>Woodard</u> hinged in significant part upon the author's understanding of the "ordinary definitions" of the term "vest[,]" as found in section 1327(b):

> Black's Law Dictionary defines the term "vest" this way: "To give an immediate, fixed right of present or future enjoyment ." <u>Black's Law Dictionary</u> 1563 (6th ed.1990) (emphasis added)[("<u>Black's</u>")]. Webster defines "vest" as: "To give a person a legally fixed immediate right of present or future enjoyment (as an estate)." Webster's Ninth New Collegiate Dictionary 1312 (1991) (emphasis added).

<u>Woodard</u>, 2006 WL 3542693, at *9.  The <u>Black's</u> definition quoted above from <u>Woodard</u> is not the preferred meaning now ascribed to the term "vest" by the publication's editors.  The preferred and second definitions, which imbue the term "vest" with ownership and title, are as follows:

> 1. To confer ownership of (property) upon a person.
> 2. To invest (a person) with the full title to property.

Black's Law Dictionary 1699 (9th ed. 2009).  Regarding the second definition of "vest" relied upon in <u>Woodard</u>, from <u>Webster's Ninth New Collegiate Dictionary</u> (1991), the current version of the Merriam-Webster Online Dictionary defines "vest" as follows: "to place or give into the possession or discretion of some person or authority[.]"  Merriam-Webster Online Dictionary 2009 <u>available at</u> <u>http://www.merriam-webster.com/dictionary/vest.</u>  Inasmuch as section 1306(a) provides that the debtor shall remain in

13

possession of all property of the estate except as otherwise provided by the plan or the order confirming the plan, the use of the term "vest" in section 1327(b) prescribes more than possession alone.[4]

### III.

The court adopts the fourth position as the most logical resolution of such inconsistency as may exist between sections 1306(a) and 1327(b).  Of course, either the plan or the order confirming the plan can, under § 1327(b), obviate issues such as those arising in this case by providing that specific property, or for that matter all debtor property, does not vest

---

[4] A more all-encompassing view of the term "vest" as used in the Bankruptcy Code is supported by 11 U.S.C. § 349, which uses the term "revests."  Section 349 provides pertinently as follows:

> Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b)(3).  The United States Court of Appeals for the Ninth Circuit has observed Congress' intent concerning the effect of "revest[ing]" under section 349(b)(3), concluding that it "'obviously contemplates that on dismissal a bankrupt is reinvested with the estate . . . .'"  In re Nash, 765 F.2d 1410, 1414 (9th Cir. 1985)(citation omitted).

in the debtor upon confirmation.  Such a course would assure the availability of that property should the Chapter 13 case convert to Chapter 7 under 11 U.S.C. § 348(f)(1).[5]

Here, neither the plan nor the order confirming the plan provided that any property of the debtors would not vest in them upon confirmation except for future earnings or income. (ROA, Doc. 4-1; ROA, Doc. 19-1).  The plan specifies that the debtors submit to the supervision and control of the trustee the monthly plan payments of $1,343 for sixty months and an extra payment of $1,800.  The plan also stipulates, "This plan complies with the provisions of Chapter 13 and all other applicable provisions of the Bankruptcy Code."  That would necessarily include the requirement of 11 U.S.C. § 1322(a)(1), as follows:

> The plan shall . . . provide for the
> submission of all or such portion of future
> earnings or other future income of the debtor
> to the supervision and control of the trustee
> as is necessary for the execution of the
> plan.

The fourth position avoids the failings of the others, namely, estate preservation that requires one to disregard the vesting provision of § 1327(b), estate termination that eliminates any estate for administration, and "middle of the road" that requires a subjective analysis of what property is

---

[5]See infra at 16.

necessary to the fulfillment of the plan.  The fourth position also fits nicely with and gives meaning to significant provisions interwoven with Chapter 13, including (1) section 1302(b)(1) which requires the trustee to make a final report and file a final accounting of the administration of the estate, (2) section 347(a) which provides that ninety days after the final distribution in a Chapter 13 case, the trustee shall stop payment on outstanding checks, and remaining property of the estate shall be paid into the court, (3) section 1329(a) that provides for limited post-confirmation amendment of the plan, (4) section 348(f)(1) providing that upon conversion of a Chapter 13 case, the property in the converted case shall consist of the property of the estate, as of the date of filing of the Chapter 13 case, that remains in the possession of or is under the control of the debtor on the date of conversion, and (5) section 348(f)(2) which provides that upon a bad-faith conversion of a Chapter 13 case, the property in the converted case shall consist of the property of the estate as of the date of conversion.

     Applying the rationale of the fourth position to this case, the property of the debtors, other than future earnings or income, vested in the debtors upon confirmation of the plan.  The debtors failed to pay income taxes incurred by them to the State

16

of West Virginia, during the course of the plan. The State filed tax liens for the years 1995 and 1997 against the debtors for those post-petition taxes, including interest and penalties, aggregating $10,431.20. Presumably those tax liens reached, inter alia, real estate owned by the debtors.[6]

Inasmuch as the property affected by the tax liens is not shown to have been property of the estate at the time the tax liens were filed, the filing did not violate the automatic stay provisions of 11 U.S.C. § 362(a) which expired at confirmation when the affected property was no longer property of the estate. 11 U.S.C. § 362(c)(1).

The voiding of the tax liens of the West Virginia State Tax Department by the bankruptcy court's order of May 9, 2000, is reversed, as is the determination by that same order that the violation was willful.

---

[6] According to the schedules in their subsequent 1998 Chapter 13 proceeding the debtors, James Edward Mullins and Martha Hopkins Mullins, were not deterred by their 1993 Chapter 13 proceeding from granting a lien on their residence real estate to secure a $21,000 indebtedness incurred by them in September 1997 to L. M. Hopkins.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Bankruptcy Judge.

        DATED:  September 30, 2009

        John T. Copenhaver, Jr.
        United States District Judge